# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GABRIEL GOMEZ and ADAM HEDBERG, <br><br> Plaintiffs, <br><br> v. <br><br> GARDA CL GREAT LAKES, INC., VILLAGE OF BROADVIEW, DETECTIVE DAVID YURKOVICH, and CURTIS MEIGHAN, <br><br> Defendants. | Case No. 13 C 1002 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' two Motions to Dismiss Plaintiffs' Second Amended Complaint. For the reasons stated herein, both Motions are denied.

## I. FACTUAL BACKGROUND

As related in the Complaint, Plaintiffs Gabriel Gomez ("Gomez") and Adam Hedberg ("Hedberg") ("Plaintiffs") were employed by Defendant Garda CL Great Lakes, Inc. ("Garda") as armored truck drivers. Garda is a private security company that transports money securities.

Part of Plaintiffs' job responsibilities included transporting sealed bags of cash. In December 2011, Plaintiffs suspected that some cash was missing from one of their bags and notified their supervisor. Plaintiffs denied any wrongdoing, and

Garda opened an internal investigation regarding the missing money.  Plaintiffs cooperated with Garda's investigation and passed polygraph examinations.

At some point, Defendant Curtis Meighan ("Meighan"), a Garda branch manager, informed the Broadview Police Department of the alleged theft.  On or about February 24, 2012, Defendant David Yurkovich ("Yurkovich"), a Broadview Police Detective, contacted Gomez.  Yurkovich told him that he was investigating Garda's missing funds and asked him to come to the police station to give a statement.  After consulting with counsel, Gomez informed Yurkovich that, when questioned, he would invoke his Fifth Amendment right to remain silent.  Two weeks later, Yurkovich called Hedberg to explain that he was investigating the Garda incident and, as with Gomez, request that Hedberg come in for questioning.  On advice of counsel, Hedberg informed Yurkovich that he intended to invoke his right to silence.

The next day, Meighan brought Gomez into his office to discuss the investigation. He informed Gomez that he had learned that he was not cooperating with Yurkovich's investigation that Garda was working alongside the police department in the investigation, and that his failure to cooperate with the police was also a failure to cooperate with Garda.  Nonetheless, Gomez told Meighan that he was choosing to exercise his right to

silence.  Meighan fired Gomez and had him escorted off Garda's property.

Meighan subsequently notified Yurkovich of Gomez's termination and the two men allegedly agreed to use their treatment of Gomez as leverage against Hedberg.  Hedberg, however, refused to go along, and invoked his right to silence. Yurkovich allegedly informed Hedberg that he had been communicating with Meighan that Gomez had already been terminated for not cooperating, and that he, too, would lose his job if he persisted in his silence.

Yurkovich contacted Hedberg for questioning again on March 5, 2012 and, again, Hedberg informed Yurkovich that he would not answer questions.  Shortly thereafter, Meighan called Hedberg into his office and informed him that he had been notified of his unwillingness to cooperate with Yurkovich's investigation. Hedberg told Meighan that he had not changed his mind and would continue to remain silent.  Meighan then terminated Hedberg's employment with Garda.

Plaintiffs brought this lawsuit.  The Second Amended Complaint (the "Complaint") seeks damages based on alleged deprivations of due process, conspiracy to deprive Plaintiffs of their constitutional rights, defamation, and retaliation. Defendants have moved to dismiss all but the defamation claim.

## II. LEGAL STANDARD

A complaint must provide a short and plain statement of the claim showing the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).

## III. DISCUSSION

### A. Conspiracy (Count III)

Count III alleges that Defendant Meighan and Yurkovich are liable under 42 U.S.C. § 1983 for conspiracy to deprive Plaintiffs of their constitutional rights. To establish § 1983 liability through a conspiracy, a plaintiff must establish that (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents. *Logan v. Wilkins,* 644 F.3d 577, 583 (7th Cir. 2011). To afford defendants fair notice of the claims against them, as required by the federal notice pleading standards, conspiracy allegations must include "the parties, the general purpose, and the approximate date of the

conspiracy." *Loubser v. Thacker,* 440, F.3d 439, 442-43 (7th Cir. 2006).

The Complaint alleges that Yurkovich and Meighan – a state official and a private individual – agreed that Plaintiffs would be terminated if they exercised their Fifth Amendment rights. Compl. ¶ 123. Both Yurkovich and Meighan threatened Plaintiffs that they would be fired if they persisted in exercising their right to remain silent. *Id.* at 124. In furtherance of the conspiracy, Meighan fired Gomez after he learned from the Broadview Police Department that Gomez was not cooperating with the investigation. *Id.* at 64-69. Meighan informed Yurkovich that he had fired Gomez, and then they agreed to use that termination to coerce Hedberg into giving a statement. *Id.* at 71. Yurkovich expressed to Hedberg that he would lose his job if he did not give a statement. Compl. ¶¶ 64, 78, 81.

These alleged facts show that Defendants intended to punish Plaintiffs for their exercise of their constitutional right to remain silent. Under the pleading standard explained in *Loubser,* these allegations of regular communication and joint action are sufficient to give Defendants fair notice of the conspiracy claim against them. Therefore, the Motion to Dismiss the conspiracy claim is denied.

## B. Due Process (Count II)

Count II alleges that Yurkovich and Meighan deprived Plaintiffs of an occupational liberty interest without due process. The concept of liberty protected by the Due Process Clause includes one's occupational liberty: "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn,* 965 F.2d 452 (7th Cir. 1992). To state a claim, a plaintiff "must show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosures." *Townsend v. Vallas,* 256 F.3d 661, 669-70 (7th Cir. 2001).

### *1. Meighan*

The Court held previously that, as to Defendant Meighan, Plaintiffs had alleged sufficiently all three elements of an occupational liberty deprivation. ECF No. 35 at 7-8 (noting statements made by Meighan to third parties that questioned Plaintiffs' integrity effectively barred Plaintiffs from employment in their chosen line of security work). Yet Plaintiffs failed to state a claim against Meighan because they failed to allege facts that would attribute Meighan's conduct to the state. *Id.* at 8.

"While a private citizen cannot ordinarily be held liable under Section 1983 because that statute requires action under color of state law, if a private citizen conspires with a state actor, then the private citizen is subject to Section 1983 liability." *Brokaw v. Mercy Cnty.,* 235 F.3d 1000, 1016 (7th Cir. 2000). As discussed above, the newest version of the Complaint alleges the existence of a conspiracy between Meighan and a state actor to deprive Plaintiffs of their constitutional right to remain silent. These allegations satisfy the state action requirement for the purposes of the pending motions, and thus Meighan's Motion to Dismiss this Count is denied.

### *2. Yurkovich*

As to Defendant Yurkovich, the Court dismissed the due process claim on the ground that the Complaint failed to allege that Yurkovich was responsible for the liberty deprivation. ECF No. 35 at 10.

In the Complaint, Plaintiffs allege that Yurkovich referred to them as "thieves" to Garda employees and unknown third parties. Compl. ¶ 93. This allegation, missing from the original Complaint, ties the alleged liberty deprivation to Yurkovich's conduct. Factual disputes, such as whether Yurkovich merely updated Meighan and Garda on the status of the investigation (as Yurkovich insists) or conspired with the other defendants to deprive Plaintiffs of their constitutional rights

(Plaintiff's version), cannot be resolved at the motion to dismiss stage.

Yurkovich asserts that he is shielded by qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). To determine whether a police officer is entitled to the defense of qualified immunity, the Court asks (1) whether "the facts alleged show the officer's conduct violated a constitutional right" and (2) "whether the right was clearly established" at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Yurkovich's defense rests entirely on his version of the allegations. Whether Yurkovich is entitled to qualified immunity is a factual question that the Court cannot decide at this stage. *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001) (explaining that "because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage in inappropriate"). Therefore, Yurkovich's Motion to Dismiss the due process claim is denied.

### C. Retaliation (Count I)

Count I, brought under § 1983, alleges that Yurkovich and Meighan retaliated against Plaintiffs by terminating their

employment after they exercised their right to remain silent. As discussed above, the alleged conspiracy between Meighan and Yurkovich provides the state action necessary for a cause of action under § 1983. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152 (1970).

"It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir. 1987). To plead adequately a retaliation claim, a plaintiff must allege that (1) he engaged in constitutionally protected activity, (2) he suffered a deprivation that would likely deter protected activity in the future, and (3) "the [protected] activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).

Plaintiffs satisfy the first element easily, because they have alleged that they invoked their Fifth Amendment right to remain silent. Next, Plaintiffs have alleged that their employment was terminated – precisely the sort of "deprivation" contemplated in Fifth Amendment retaliation cases. *Lefkowitz v. Cunningham,* 431 U.S. 801, 805-06 (1977). Finally, Plaintiffs have alleged that Meighan terminated their employment immediately

after learning that they had exercised their rights. Compl. ¶¶ 68, 69, 87, 90, 91. This close timing is a sufficient basis for the Court to infer, when ruling on a motion to dismiss and drawing all inferences in favor of the Plaintiffs, that the Plaintiffs were fired because they invoked their Fifth Amendment privilege against self-incrimination. *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) (explaining that suspicious timing can supply a causal nexus when "an adverse action comes so close on the heels of a protected act that an inference of causation is sensible"). Plaintiffs have pled adequately all three elements of a constitutional retaliation claim.

Defendants contend that this case is governed by a line of Seventh Circuit cases that discuss Title VII employment discrimination claims brought against state employers under § 1983. In one case, for example, the Seventh Circuit explained that Section 1983 provides a remedy for deprivation of constitutional rights; it "does not provide a remedy for rights created under Title VII." *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 951 (7th Cir. 2002). This line of cases is inapplicable because Plaintiffs rely on their Fifth Amendment privilege against self-incrimination and the corresponding right to be free from retaliation when that right is exercised, not any employment-related right created by Title VII.

## D. Retaliatory Discharge (Count VI)

Plaintiffs assert a state law retaliatory discharge claim against the Garda Defendants. To state a retaliatory-discharge claim, a plaintiff must allege that (1) an employee has been discharged, (2) in retaliation for the employee's activities, and (3) that the discharge violated a clear mandate of public policy. *Bourbon v. Kmart Corp.,* 223 F.3d 469, 472 (7th Cir. 2007).

While there is "no precise definition of the term" public policy, the Illinois Supreme Court has explained that it "concerns what is right and just and what affects the citizens of the State collectively." *Palmateer v. Int'l Harvester Co.,* 421 N.E.2d 876, 878 (Ill. 1981). Public policies are to be distinguished from those matters that are "purely personal." *Id.* So, for example, the tort applies in situations where the employee was fired for refusing to violate a statute or refusing to evade jury duty, and not circumstances where the worker was fired over a dispute over company policy or where the worker took too much sick leave. *Id.* at 879 (citing cases).

The Complaint alleges that Plaintiffs were terminated for exercising their right to remain silent. That right is protected by the Fifth Amendment to the United States Constitution, Article I, Section 10 of the Illinois Constitution, and Section 5/103-2(a) of Chapter 725 of the Illinois Code. Similar to the right to refrain from violating the law and the obligation

to attend jury duty, the right to remain silent "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." It is precisely the sort of "public policy" that is violated when a citizen is fired for engaging in that protected conduct.

Defendants argue that the privilege against self-incrimination restricts only government conduct. Defendants will have an opportunity to prove, through facts adduced in discovery or at trial, that they were not engaged in a conspiracy and are otherwise not a state actor. However, for the purposes of the motion to dismiss, the Complaint presents a plausible case that Plaintiffs may be entitled to relief. Thus, the Motion to Dismiss this Count is denied.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motions to Dismiss [ECF Nos. 37, 42] are denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:12/30/2013